[No. C041382. Third Dist. Jan. 10, 2003.]

In re O.K. et al., Persons Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
MAXIMILLIAN K. et al., Defendants and Appellants.

---

**COUNSEL**

Beth A. Melvin, under appointment by the Court of Appeal, for Defendant and Appellant Maximillian K.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant Anna L.

Robert A. Ryan, Jr., County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

---

**OPINION**

**HULL, J.**—Appellants, the mother and father of the minors, appeal from the order of the juvenile court terminating their parental rights. (Welf. & Inst. Code, §§ 366.26, 395; further undesignated statutory references are to the Welfare and Institutions Code.) Appellants contend the juvenile court erred when it conducted the section 366.26 hearing without ensuring compliance with the notice provisions of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1902 et seq.) We affirm the order.

### FACTS AND PROCEDURAL HISTORY

The Sacramento County Department of Health and Human Services (DHHS) filed dependency petitions in October 2001 concerning the newborn minor twins, based on allegations that appellants had committed lewd and lascivious acts on the minors' six-year-old half sibling and were incarcerated pending trial for these acts. The petitions were subsequently amended to add allegations that another half sibling had also been molested.

The minute order from the detention hearing indicated that the mother "may be of Native American [h]eritage." ICWA notice was sent to the Bureau of Indian Affairs (BIA). In a letter accompanying the notice to the BIA, a paralegal with DHHS advised that the mother "may have Indian ancestry but she has been unable to provide information regarding her family history or tribal affiliation." Correspondence from the BIA stated that the ICWA notice was being returned because it contained "[i]nsufficient identifying tribal information."

The juvenile court sustained the amended petitions and denied reunification services. The minors were placed in the home of a relative and her "significant other" who were willing to adopt them. The social worker recommended termination of parental rights and a permanent plan of adoption.

At the section 366.26 hearing, the juvenile court addressed the application of the ICWA, stating: "There are references concerning the [ICWA], but there doesn't appear that there is a parent who is either enrolled or eligible for enrollment; is that correct?" The paternal grandmother, who was present at the hearing, replied, "I'm not understanding that too well, but the boy—the young man may have Indian in him. I don't know my family history that much, but where were [sic] from it is that section so I don't know about checking that." The paternal grandmother said she was not an enrolled member, she did not know whether she or the father was eligible for membership and she was not able to identify a particular tribe or nation. The father, who was present, did not comment on the paternal grandmother's claim regarding Indian heritage.

The juvenile court adopted the recommendations of the social worker for termination of parental rights and a permanent plan of adoption. With regard to the application of the ICWA, the court stated it did not have reason to believe that "[the] parent is a person described under the parameters of the [ICWA]," stating that "[f]or the children to be described under . . . the [ICWA], they need to be the child of a parent who is either enrolled or eligible for enrollment." The court's written order included a finding that there was no reason to believe the children were Indian children.

## DISCUSSION

Appellants contend the information provided by the paternal grandmother at the section 366.26 hearing was sufficient to trigger the notice requirements of the ICWA with regard to the father's possible Indian heritage. We disagree.

Congress passed the ICWA in 1978 "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture . . . .'" (*In re Levi U.* (2000) 78 Cal.App.4th 191, 195 [92 Cal.Rptr.2d 648]; 25 U.S.C. § 1902.)

The ICWA's procedural and substantive requirements must be followed in involuntary child custody proceedings when an "Indian child" is involved. An "Indian child" is defined by the ICWA as "any unmarried

person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

Among the procedural safeguards included in the ICWA is the provision for notice. The ICWA provides, in part: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. . . ." (25 U.S.C. § 1912(a).) "Notice shall be sent whenever there is reason to believe the child may be an Indian child, and for every hearing thereafter unless and until it is determined that the child is not an Indian child." (Cal. Rules of Court, rule 1439(f)(5); further references to rules are to the California Rules of Court.)

"The Indian status of the child need not be certain to invoke the notice requirement. [Citation.] Because the question of membership rests with each Indian tribe, when the juvenile court knows or has reason to believe the child may be an Indian child, notice must be given to the particular tribe in question or the Secretary [of the Interior]." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 471 [99 Cal.Rptr.2d 688].)

The circumstances under which a juvenile court has reason to believe that a child is an Indian child include, but are not limited to, the following: "(i) Any party to the case, Indian tribe, Indian organization or public or private agency informs the court that the child is an Indian child. [¶] (ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which suggests that the child is an Indian child. [¶] (iii) The child who is the subject of the proceeding gives the court reason to believe he or she is an Indian child. [¶] (iv) The residence or the domicile of the child, his or her biological parents, or the Indian custodian is known by the court to be or is shown to be a predominantly Indian community. [¶] (v) An officer of the court involved in the proceeding has knowledge that the child may be an Indian child." (Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584, 67586 (Nov. 26, 1979)) (Guidelines); rule 1439(d)(2).)

Not one of these enumerated circumstances applies in the present matter. The paternal grandmother was not a party to the proceedings, and

neither the Guidelines nor rule 1439(d)(2) expressly include relatives as a source of information that would give the court reason to believe that a minor is an Indian child. Furthermore, even if the paternal grandmother was a party, she did not "inform[] the court" (Guidelines, 44 Fed. Reg. at p. 67587) that the minors were Indian children, i.e., that they were either members of a tribe or the biological children of tribal members and eligible for membership.

■ Appellants claim that the information provided by the paternal grandmother was sufficient to give the juvenile court reason to believe that the minors might be Indian children because it came from a "close relative." It is true that the circumstances listed under the Guidelines and rule 1439(d)(2) are not exclusive, and we can certainly envision circumstances under which information from a close relative concerning a child's Indian ancestry would be sufficient to trigger the notice requirements of the ICWA.

■ However, we conclude with little difficulty that such is not the situation here, not because the paternal grandmother was only a relative, but because the information she provided was insufficient to give the court reason to believe that the minors might be Indian children. The information provided by the paternal grandmother that the father "may have Indian in him" was not based on any known Indian ancestors but on the nebulous assertion that "where were [*sic*] from is that section . . . ." This information was too vague and speculative to give the juvenile court any reason to believe the minors might be Indian children.

Appellants' reliance on *In re Levi U., supra*, 78 Cal.App.4th 191, is misplaced. In that case, the paternal grandmother reported that her mother was born on a reservation in Oklahoma, but she did not know which tribe and her mother was deceased. (*Id.* at p. 194.) The father reported he had been told that the paternal great-grandfather was one-sixteenth Indian. The issue presented was whether the juvenile court was required to proceed as if the minors were Indian children when notice had been sent to the BIA, but no response had been received. Based on the "rather vague information provided by family members," we held that the juvenile court had no further duties under the ICWA. (*Id.* at pp. 198-199.) *In re Levi U.* did not present the issue of whether the information provided concerning Indian heritage was sufficient to trigger the ICWA's notice requirements.

The other cases relied on by appellants are distinguishable in that they involved information that a parent, or an immediate relative of the minor, was a member or might be eligible for membership in a tribe. (*In re IEM* (1999) 233 Mich.App. 438 [592 N.W.2d 751, 755]; *In re J.T.* (1997) 166 Vt. 275 [693 A.2d 283, 288]; *In re M.C.P.* (1989) 153 Vt. 275 [571 A.2d 627, 630-631].) Appellants emphasize that, in *In re IEM, supra*, 592 N.W.2d 751,

the reviewing court ordered remand for compliance with the ICWA's notice requirements, even though the mother did not claim a specific tribal affiliation. Here, it was not the paternal grandmother's failure to specify a tribal affiliation that rendered the information insufficient but her failure to assert any information that would reasonably suggest that the minors had any known Indian heritage.

Appellants also argue that notice to the BIA was required under rule 1439(e). Rule 1439(e) provides that when the box on a dependency petition is marked indicating that a minor "may be of Indian ancestry" but not that the minor is, or may be, an Indian child, notice of the proceedings to the BIA and further inquiry regarding the minor's possible Indian heritage are required.

The boxes indicating possible Indian ancestry were not marked on the minors' dependency petitions, and the information provided by the paternal grandmother was too indefinite to give the court any reason to believe that the minors may have Indian ancestry. Thus, rule 1439(e) was inapplicable under the present circumstances.

## DISPOSITION

The juvenile court's order is affirmed.

Sims, Acting P. J., and Nicholson, J., concurred.

On February 10, 2003, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 14, 2003.