Filed 4/16/13  In re D.S. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.S. et al., Persons Coming Under the Juvenile Court Law. | B243498 (Los Angeles County Super. Ct. No. CK49052) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOSEPH S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Marguerite D. Downing, Judge.  Reversed with directions.

California Appellate Project, under appointment by the Court of Appeal, Jonathan B. Steiner, Executive Director, and Anne E. Fragasso for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Melinda A. Green, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

Joseph S. (Father) appeals from a July 23, 2012 order terminating his parental rights over D.S. (born in 1998) and D.S. (born in 2002) (collectively minors), contending that substantial evidence did not support the juvenile court's finding that proper notice was given under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Father argues that the Department of Children and Family Services (DCFS) failed to comply with the inquiry and notice requirements of the ICWA because the notices it sent to the Bureau of Indian Affairs (BIA) did not include all available information regarding paternal grandmother and paternal great-grandmother. Father also contends notice should have been sent to Arizona tribes. Natasha J. (Mother) is not a party to this appeal.

We agree with Father's contentions and reverse the July 23, 2012 order terminating Father's and Mother's parental rights and remand the case to the juvenile court with directions to order DCFS to provide the BIA and Arizona tribes with proper notice of the proceedings under the ICWA. If, after receiving proper notice, a tribe determines the minors are Indian children as defined by the ICWA, the court shall proceed in conformity with the provisions of the ICWA. If no tribe indicates the minors are Indian children within the meaning of the ICWA, the court shall reinstate the order terminating Father's and Mother's parental rights over the minors.

## BACKGROUND

We discuss only the facts pertinent to this appeal regarding the ICWA notice and not the facts leading up to the filing of the Welfare and Institutions Code section 300 petitions on behalf of the minors and the termination of parental rights.[1]

Father appeared at a May 21, 2002 detention hearing at which the following discussion regarding possible Indian heritage occurred. The juvenile court asked, "Are either one of [the minors] eligible to enroll in the American-Indian tribe?" Father replied, "Well, I mean, like my, um, grandmother and everybody said I was Indian but like — they're like prejudiced, so I haven't been like really raised around any of my Indian-American family because they kind of resented my mama because my daddy was black.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

So, I mean, I really don't know as far as like who to go to to even consider it, you know what I'm saying?  Like, to look it up to see what kind of heritage I'm from."  The court stated, "Okay.  Do you know what kind of an Indian your grandmother was?"  Father responded, "That's what I'm saying.  I don't even know.  I mean, you know, my mother, I don't know if she's Navajo or . . . ."  Father stated that paternal grandmother was living and gave her name as Catalina B., also known as Catalina G.  Father said that he did not know how to contact paternal grandmother, but knew that she was born on November 19, 1952.  He stated that he "would have American-Indian blood" through paternal great-grandmother.  Father said, "I know my grandmother is American-Indian because she's in a town in a reservation in Arizona as far as I've heard you know."  Father did not know paternal great-grandmother's name.  The juvenile court stated, "[DCFS] can attempt to do a due diligence from [*sic*] a Catalina [B.] with the birth date of 11-19-52 and see if you can locate her."

Later, DCFS reported that a due diligence search for paternal grandmother revealed nine possible addresses to which DCFS mailed letters and a possible telephone number, "which was determined to be a wrong number."  DCFS also found a social security number and driver's license number for a person named Catalina G.

DCFS sent notice of the January 22, 2004 section 366.26 hearing by certified mail to the BIA office in Sacramento, California, and the BIA Office of Tribal Services in Washington, D.C.  The notices did not include any information regarding paternal grandmother or paternal great-grandmother.

At the January 22, 2004 hearing, the juvenile court stated, "To the parents, we have notice to the BIA by certified mail.  We can make a notice finding as to the [bureau] to be proper as they were noticed both in Washington and Sacramento and they have not responded that these children are children that qualify under ICWA.  Okay.  So we have proper notice finding."

The April 19, 2004 status report stated that DCFS "noticed the [BIA] on 11/24/2003.  [DCFS] has not received a response from the [BIA].  Father . . . has stated that he does not know what tribe his family is affiliated with."  Subsequent DCFS reports

3

stated that "[a] search of the records found no ICWA finding" and requested that the juvenile court make a "no ICWA finding" so that DCFS could "proceed to adoption."

On July 23, 2012, the juvenile court found that "the court has no reason to know that [ICWA] applies; finds that these are not Indian children." Thereafter, the court terminated Father's and Mother's parental rights. Father appealed.

## DISCUSSION

**Substantial evidence did not support the juvenile court's finding that proper notice was given under the ICWA**

Father contends that substantial evidence did not support the juvenile court's finding that proper notice was given under the ICWA. Father argues that DCFS failed to comply with the inquiry and notice requirements of the ICWA because the notices it sent to the BIA did not include any information regarding paternal grandmother and paternal great-grandmother. He also contends that notice should be sent to Arizona tribes. We agree with Father's contentions.

"Congress passed the ICWA in 1978 'to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children "in foster or adoptive homes which will reflect the unique values of Indian culture . . . .'" [Citations.]" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1164.) If the court "knows or has reason to know that an Indian child is involved" in a dependency proceeding, the social worker or probation officer shall provide notice to the child's tribe. (§§ 224.2, subd. (a), 224.3, subd. (d).)

Pursuant to section 224.2, subdivision (a) "(3) Notice shall be sent to all tribes of which the child may be a member or eligible for membership, until the court makes a determination as to which tribe is the child's tribe in accordance with subdivision (d) of Section 224.1, after which notice need only be sent to the tribe determined to be the Indian child's tribe. [¶] (4) Notice, to the extent required by federal law, shall be sent to the Secretary of the Interior's designated agent, the Sacramento Area Director, Bureau of Indian Affairs. If the identity or location of the parents, Indian custodians, or the minor's tribe is known, a copy of the notice shall also be sent directly to the Secretary of the

Interior, unless the Secretary of the Interior has waived the notice in writing and the person responsible for giving notice under this section has filed proof of the waiver with the court." (§ 224.2, subd. (a)(3), (4).)

Notice must include "specified" information, including "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).)

"If the court or the Department 'knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members . . . , contacting the Bureau of Indian Affairs . . . [,] the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility.' (§ 224.3, subd. (c); see Cal. Rules of Court, rule 5.481(a)(4).) The circumstances that may provide reason to know the child is an Indian child include, but are not limited to, 'A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe.' (§ 224.3, subd. (b)(1).)" (*In re Gabriel G.*, *supra*, 206 Cal.App.4th at pp. 1165–1166.)

The juvenile court's findings whether proper notice was given under the ICWA and whether the ICWA applies to the proceedings are reviewed for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403–404.)

We first discuss DCFS's argument that although DCFS noticed the BIA out of "an abundance of caution," the juvenile court did not make an "order requiring ICWA notice" and Father's statements were "far to [*sic*] speculative to trigger ICWA notice." DCFS's citations to *In re O.K.* (2003) 106 Cal.App.4th 152 and other cases in which relatives'

5

statements were determined to be too vague to put the juvenile court on inquiry notice are not persuasive. (See, e.g., *In re O.K.*, at p. 155 [statement that "the young man may have Indian in him. I don't know my family history that much, but where were [*sic*] from it is that section so I don't know about checking that" too vague to require notice].)

Here, Father made several unequivocal statements that gave the juvenile court reason to know that Indian children were involved in the matter. Father stated that he had been told by family members that he was Indian, but he had not been raised "around" his Indian relatives "because they kind of resented my mama because my daddy was black." He said that paternal grandmother was Indian. He also stated that he "[knows paternal great-grandmother] is Indian because she's in a town in a reservation in Arizona." (See *In re Gabriel G.*, *supra*, 206 Cal.App.4th at p. 1165 ["'[T]he juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement'"]; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408 [father's suggestion that child "might" be an Indian child because paternal great-grandparents had unspecified Indian ancestry was enough to trigger notice].) And we reject DCFS's argument that Father's statement that paternal great-grandmother lived "in a town in a reservation in Arizona" did not mean that she lived "*on* an actual reservation," and therefore notice was not triggered. (Italics added.) We conclude that Father's statements were sufficient reason for the court to know that an Indian child was involved.

Next, we conclude that DCFS failed to comply with the inquiry and notice requirements of the ICWA because the notices sent to the BIA offices did not contain all available information regarding paternal grandmother and paternal great-grandmother as required under section 224.2, subdivision (a)(5)(C) and because notices were not sent to Arizona tribes.

"ICWA notice requirements are strictly construed" and must contain enough information to be meaningful. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703; *id.* at pp. 700, 704 [DCFS did not comply with notice requirements where child family history section in ICWA notices were "largely left blank" and DCFS did not include "any background information" regarding paternal grandmother, even though father claimed

6

Indian heritage and DCFS "easily could have contacted the paternal grandmother for additional pertinent information"].) "It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage. [Citation.]" (*Id*. at p. 703.) Notices must include "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).)

DCFS failed to comply with the inquiry and notice requirements of the ICWA because the notices to the BIA did not contain all available information, including paternal grandmother's name and alias, or her birthdate, or her nine possible addresses, or the social security number and driver's license number associated with a person with the same name as paternal grandmother, or information that paternal great-grandmother lived on a reservation in Arizona. And while we agree with DCFS that Father did not specify paternal grandmother was a member of the Navajo tribe by his statement that "my mother, I don't know if she's Navajo or . . . ," we conclude that Father's statement that paternal great-grandmother lived on a reservation in Arizona triggered notice to Arizona tribes. We conclude that the case must be remanded to the juvenile court with directions to order DCFS to provide proper notice of the proceedings under the ICWA to the BIA offices and to Arizona tribes.

Therefore, we conditionally reverse the juvenile court's order terminating Father's and Mother's parental rights. (*In re Gabriel G.*, *supra*, 206 Cal.App.4th at p. 1168 [limited reversal appropriate to ensure that ICWA requirements are met].) If, after proper notice, the court finds that minors are Indian children, the court shall proceed in conformity with the ICWA. If it is determined on remand that the minors are not Indian children, the order shall be reinstated.

7

# DISPOSITION

The July 23, 2012 order terminating Father's and Mother's parental rights is reversed and the case is remanded to the juvenile court with directions to order DCFS to provide the BIA and Arizona tribes with proper notice of the proceedings under the ICWA.  If, after receiving proper notice, a tribe determines the minors are Indian children as defined by the ICWA, the court shall proceed in conformity with the provisions of the ICWA.  If no tribe indicates the minors are Indian children within the meaning of the ICWA, the juvenile court shall reinstate the order terminating Father's and Mother's parental rights over the minors.

NOT TO BE PUBLISHED.

MALLANO, P. J.

We concur:


ROTHSCHILD, J.


CHANEY, J.