Filed 2/13/14  In re M.G. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re M.G. et al., Persons Coming Under the Juvenile Court Law. | C072993 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.H.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. 11JVSQ2909501 & 11JVSQ2909601) |

C.H., mother of minors, appeals from the juvenile court's orders entered at a combined six-month review and petition for modification hearing.  (Welf. & Inst. Code,

§§ 366.21, 388, 365.)[1]  She contends that:  1) her (retained) counsel provided constitutionally ineffective assistance; 2) there was insufficient evidence of reasonable reunification services; 3) the juvenile court failed to advise her that a section 366.26 hearing may be instituted if she fails to reunify; and 4) the juvenile court failed to ensure that proper notice of the proceedings was received by the Bureau of Indian Affairs (BIA) in accordance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).  Because we disagree with mother's contentions, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Detention*

On November 3, 2011, officers conducted a probation search of the minors' father's residence.  Mother and the couple's two children (the minors, then ages three and four) were there.  The residence was filthy; officers found a "potential improvised explosive device," marijuana, smoking pipes, and methamphetamine residue in the residence, along with many cats and two malnourished dogs.  Officers called the bomb squad and animal control, evacuated the house, and took father into custody.  Officers released the children to mother after she claimed she and the children did not live there and provided officers an address.

Officers talked to mother on November 7, 2011.  She was at father's residence and said she was "home alone" with the children.  She claimed she stayed there intermittently, including spending the night.  When she was not there, she said she stayed with her brother in his motor home.  It was subsequently discovered; however, that mother had provided false addresses and had been living with father at his residence.

On November 9, 2011, the Shasta County Health and Human Services Agency (the Agency) filed a section 300 petition alleging both parents had substance abuse

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

problems, father was a registered sex offender, having molested his then six-year-old stepdaughter, and the home was in dangerous condition.

The juvenile court held a detention hearing on November 10, 2011. Although mother had been informed of the hearing, she did not appear with the minors and their whereabouts were unknown. The court issued protective custody warrants and ordered an interim case plan, which included the requirement that mother participate in a "screening for services with Roxanna Zalensny, LCSW."

On November 21, 2011, mother contacted the social worker and told her she had taken the minors to Oregon. Mother said she was staying in a shelter there and claimed to be afraid of father due to ongoing domestic violence. On November 30, 2011, after Oregon officials determined mother had provided a series of false stories about the proceedings and occurrences in Shasta County, they placed the minors in protective custody and delivered them to the Agency for placement in foster care.

The Agency offered services to mother in California but she declined. The Agency was unable to provide services for mother in Oregon; however, she reported that she was engaging in services in Oregon. The social worker repeatedly reminded mother that she needed to participate in the Shasta County mental health assessment (with Roxanna Zalensny) to which mother had been referred. Completion of the mental health assessment was critical to the Agency's determination of whether mother would benefit from certain services and which services to assign mother to complete in her case plan.

*Jurisdiction/Disposition*

On March 13, 2012, the juvenile court found the allegations in the petition true, declared the minors dependents, and ordered them removed from parental custody. The court ordered reunification services be provided to mother, and again ordered mother to complete the mental health assessment, as well as services as ordered. The social worker met with mother on July 18, 2012, to review the case plan and allow her to provide input as to any additional elements she felt would be of use to her. Because mother had still

3

not undergone the mental health assessment, the social worker wrote the case plan without that information. Mother was required to sign and return the written plan. When she failed to do so, the social worker filed it unsigned on August 15, 2012, and sent a copy to mother's counsel.

*Section 388 Petition and Combined Hearing*

On August 24, 2012, mother, who was still living in Oregon, filed a section 388 petition for modification, requesting the minors be returned to her custody and jurisdiction terminated. She alleged she had "completed all services that may be completed" and that "there are no further services that are remotely necessary." The juvenile court ordered the matter to be heard in conjunction with the upcoming six-month review hearing. The hearing was subsequently continued from September 11, 2012, to October 11, 2012.

Both mother and the social worker testified at the combined hearing. Mother had not completed the mental health assessment as ordered. Instead, she had participated in an assessment in Oregon with a provider who had not been given any information by Shasta County and who had based the assessment on mother's self-reporting. Additionally, mother had not provided the releases necessary to permit the Agency to gather information from mother's Oregon providers. Mother testified that she was aware that the Agency wanted the releases but, when asked if she was willing to sign them, responded that she "was going over that with [her] attorney" and needed more information so she could make a "better decision."

The court then took a recess to allow mother to consult with her attorney about her questions. After the break, mother was still unwilling to sign the releases, and mother's attorney indicated mother had questions for county counsel. At this point, the juvenile court held an off record discussion with all parties, offering to "simply go into a settlement mode" and get mother's questions answered. The record is not clear as to the

4

outcome of this off record discussion, and whether any required releases were actually obtained from mother.

The juvenile court found the Agency's concerns regarding the sufficiency of the Oregon assessment and services valid since the Oregon information was based entirely upon mother's self reports and she had a substantial history of questionable veracity and candor related to this case. It also found that mother's failure to sign releases and undergo the mental health assessment had prevented the Agency from properly identifying necessary services for mother to complete in order to overcome the issues that brought the minors before the court. The juvenile court denied mother's petition for modification and ordered continued reunification services. Mother appealed the orders.

## DISCUSSION

### I

### *Ineffective Assistance*

A. *The Allegations*

Mother argues first that "a reasonably competent attorney" "would have known" and "would have advised" her of many things during the dependency process. She does not, however, show where the record indicates that counsel did *not know* or *failed* to advise her of the things she now argues any competent counsel should know and do. She first criticizes counsel's litigation tactics, and then claims trial counsel: 1) "fail[ed] to recognize" the importance of the mental health assessment and assure that mother completed it; 2) took an "adversarial posture regarding signing releases"; 3) failed to "encourage[]" mother to communicate with the social workers; and 4) failed to present the necessary witnesses (from Oregon) to admit proof of mother's (Oregon) services.

Mother claims prejudice due to counsel's actions because these actions "confused" her, adding that had she been properly advised as to the court's orders and the need to comply by her trial counsel, she "very likely would have complied." She adds that had she been advised by *counsel* to complete the mental health assessment (presumably rather

5

than having been merely repeatedly ordered by the court and reminded by the social worker), it is "reasonably likely" that she would have done so and also that she would have signed the requisite releases.

B. *Law and Analysis*

A coherent appellate claim of ineffective assistance of counsel must demonstrate that trial counsel acted below professional norms, including that counsel had no rational tactical purpose for so acting, and that the error caused prejudice. (See *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.) Mother bears the burden of establishing by "facts, not speculation," that "counsel rendered ineffective assistance." (*People v. Mattson* (1990) 50 Cal.3d 826, 876-877.) She has not carried that burden.

First and foremost, it is inappropriate for us to speculate as to the existence or nonexistence of a tactical basis for a trial attorney's course of conduct on an appellate record that does not illuminate the basis for counsel's challenged conduct. (*People v. Wilson* (1992) 3 Cal.4th 926, 936.) This record casts no light on counsel's conduct. Although mother argues that counsel should have known and should have advised her as to many issues that she argues were relevant to the success or failure of her claims in the juvenile court, as we mentioned *ante*, she cannot show on this record that counsel did not know or failed to advise her of the things she now argues any competent counsel should know and do. Not one of mother's allegations is supported by the record; the record does not contain declarations or other evidence of mother's subjective beliefs or her attorney-client communications. We do not evaluate alleged deficiencies in counsel's performance solely on unsubstantiated speculation.[2] (*People v. Bolin* (1998) 18 Cal.4th 297, 334.)

---

[2] Contrary to mother's multiple claims that certain points have been conceded by the Agency, respondent's failure to address contentions made by appellant's opening brief does not concede those contentions or otherwise indicate that they have merit. (*People v.*

Here, mother's claims of prejudice are purely speculative; the record contains no evidence of the confusion she now claims, nor does it show that had she been properly advised as to the court's orders and the need to comply by her trial counsel, she "very likely would have complied" as she argues on appeal. Instead, the record demonstrates that it is just as likely mother's own recalcitrance rather than counsel's purported failings resulted in mother's noncompliance.

The sole claim of inadequate performance not based entirely on speculation is trial counsel's failure to successfully move several exhibits into evidence at the hearing-- exhibits that apparently demonstrated mother's completion of certain services and assessments in Oregon. As we discussed *ante*, the evidence indicated the Agency and court alike were highly suspicious of records regarding mother's services in Oregon, given that these were self-reported and there were no releases signed that would permit the requisite exchange of information between the states that would make the assessments more reliable. However, here we shall assume without deciding that effective trial counsel would have ensured that the juvenile court received these items into evidence.[3] Even assuming counsel's failure to provide an adequate foundation to move these exhibits into evidence was constitutionally deficient, mother fails to establish prejudice. Mother must show a reasonable probability that, had the subject exhibits been received into evidence, the *result* would have been different -- that is, the juvenile court would

*Hill* (1992) 3 Cal.4th 959, 995, fn. 3, overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13; *Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 227.) The judgment or order of the lower court is presumed correct and it is incumbent on appellant to affirmatively establish error. (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.)

[3] In any event, we need not consider whether counsel's performance was deficient before examining whether prejudice was suffered as a result of the alleged deficiencies. (*People v. Holt* (1997) 15 Cal.4th 619, 703.) Indeed, when it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674, 699].)

have returned the minors to her custody. On this record, she does not and cannot make the requisite showing.

In sum, each of mother's allegations of ineffective assistance fail.

II

*Reasonable Reunification Services*

Mother next contends "there was insufficient evidence to support the juvenile court's findings that reasonable reunification services were provided." Mother does not contend, however, that the social worker did not refer her to the appropriate county services in accordance with her case plan. Instead, she cursorily complains that the social worker did not provide her with services in Oregon and posits that the social worker's testimony was "unreliable." She provides no authority, however, for her apparent position that services are unreasonable simply because they are not provided in the state to which a parent fled after the case had been initiated. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [point made without meaningful legal analysis and citation to authority is deemed without foundation and requires no discussion by reviewing court].) We do not discuss claims such as this one that are asserted perfunctorily and insufficiently developed. (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2.) Nor do we reweigh evidence or reevaluate a witness's credibility. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

Mother also points to purported inadequacies in the preparation and contents of the case plan itself. The juvenile court found that any inadequacies in the preparation of the case plan were caused by mother's refusal to comply with court orders and the requirements set forth in the interim case plan. By refusing to submit to the court-ordered mental health assessment necessary for the Agency to determine her case plan needs, mother herself prevented the timely and accurate development of her case plan. Further, as we noted *ante*, mother met with the social worker in July 2012 to review the case plan

8

and provide input as to any additional elements mother felt would be of use to her. The juvenile court properly found that reasonable services had been provided to mother.

## III

### *Insufficient Notice*

Mother next contends the juvenile court erred in failing to advise her at the six-month review hearing that the court could set a section 366.26 hearing if mother fails to reunify with the minors by the 12-month review hearing. While the juvenile court is statutorily obliged to so advise (see § 366.21, subd. (e)),[4] and here it does not appear the court gave the advisement, mother fails to identify how she has been prejudiced by the juvenile court's omission.

First, the record does not reflect that the juvenile court has even set a section 366.26 hearing. Second, mother was made aware of the possibility that the court might set such a hearing by other means.[5] (See *In re Carolyn R.* (1995) 41 Cal.App.4th 159, 164 [omission harmless error where mother was warned at the outset of the case that her parental rights could be permanently terminated in the event of unsuccessful reunification].) Finally, the juvenile court's January 11, 2013, findings and orders from which mother appealed included the following language: "The likely date by which the children may be returned to and safely maintained in the home or placed for adoption, appointed a legal guardian, permanently with a relative, or placed in an identified

---

[4] Section 366.21, subdivision (e), provides, in part: "The court shall also inform the parent or legal guardian that if the child cannot be returned home by the 12-month permanency hearing, a proceeding pursuant to Section 366.26 may be instituted."

[5] Although mother asserts to the contrary, the record contains her signed notice from December 2011, informing her that, at the end of the court-ordered reunification period of 12 months, the court must either return the minors to her care or make a permanent plan to have someone else raise them. This information is the functional equivalent of the information which she now complains the court did not provide.

9

placement with a specific goal is March 6, 2013." For all these reasons, mother cannot show prejudice from the juvenile court's omission.

## IV

### *ICWA*

Mother next contends the juvenile court erred in failing to ensure that proper ICWA notice was received by the BIA. Although mother is correct that the Agency did not establish that the ICWA notices it sent on December 27, 2012, were actually received by the BIA as required by statute, her claim of error is not ripe for review. At the January 11, 2013, six-month review hearing from which she now appeals, the juvenile court *deferred* the ICWA determination. The juvenile court did not find that ICWA did not apply until the April 23, 2013, hearing -- an order not encompassed by the instant appeal.

Further, mother fails to show where in the record she provided sufficient information that the minors may be Indian children so as to trigger the notice requirements. Mother admits in her briefing that "it is not clear" the minors are "eligible for membership in any tribe." Mother merely informed the court and Agency that she "may" have Indian ancestry, but could not name a tribe.[6] Mother points to nothing else relevant to triggering notice requirements in the record, and we see nothing.

This case is analogous to *In re O.K.* (2003) 106 Cal.App.4th 152 (*In re O.K.*), where the father's mother told the juvenile court that the father "'may have Indian in him. I don't know my family history that much, but where were [*sic*] from it is that section so I don't know about checking that.'" (*In re O.K., supra*, 106 Cal.App.4th at p. 155.) This

---

[6] The minors' father filed forms stating he did not have any known Indian ancestry. Although trial counsel referenced an ICWA form 030 which was apparently sent to the Agency, the appellate record contains only a letter sent to mother indicating the form 030 is attached to be completed and the first page of an uncompleted form. Counsel references only the letter on appeal.

court held the assertion was "insufficient to give the court reason to believe that the minors might be Indian children." (*Id.* at p. 157.) Similarly, in *In re J.D.* (2010) 189 Cal.App.4th 118 (*In re J.D.*), where the minor's grandmother told the [Agency], "'I can't say what tribe it is and I don't have any living relatives to provide any additional information. I was a little kid when my grandmother told me about our Native American ancestry but I just don't know which tribe it was[,]'" the information was "too vague, attenuated and speculative" to give the court any reason to believe the children might be Indian children. (*In re J.D., supra,* 189 Cal.App.4th at p. 125.) Likewise, mother's vague assertion in this case was insufficient to trigger the ICWA notice requirements.

## DISPOSITION

The orders of the juvenile court are affirmed.


      DUARTE      , J.


We concur:


    BLEASE    , Acting P. J.


    MAURO    , J.

11