Filed 3/7/14  In re Joshua S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JOSHUA S., a Person Coming Under the Juvenile Court Law. | B251151 |
| | (Los Angeles County Super. Ct. No. CK93193) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent.<br><br>v.<br><br>MALISSA S.,<br><br>Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Jacqueline H. Lewis, Commissioner.  Affirmed.

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel for Plaintiff and Respondent.

Malissa S. (mother), mother of Joshua S., appeals from an order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1] Mother contends that the order terminating her parental rights must be reversed because the juvenile court failed to ensure compliance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901) notice requirements. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 25, 2012, the Department of Children and Family Services (DCFS) filed a section 300 petition on behalf of then, five-month-old Joshua, and his older half-siblings, Julian and J.[2] It was alleged that mother used illicit drugs and was a current user of methamphetamine which placed the children at risk of harm and created a detrimental home environment. It was also alleged that there were guns within access of the children; methamphetamine was being packaged for sale in the home; and the children were exposed to illicit drug trafficking in the home

Mother stated that Joshua's father is a man named George who she met through a friend and knows nothing about, not even his last name. Mother further stated that George is in jail and has never been involved with Joshua.

Mother advised the DCFS social worker that she was of Cherokee descent, but is not registered with any Cherokee tribe.

At the detention hearing on April 25 and 26, 2012, Joshua was ordered detained. His siblings were released to their father. Mother filled out the ICWA-020 Judicial Council form entitled "Parental Notification of Indian Status," claiming she had possible Cherokee heritage. The court found that it had "no reason to know that the child would fall under the [ICWA]." However, DCFS was ordered to contact the party claiming possible American Indian heritage and investigate that claim. The court ordered the social worker to provide a supplemental report with the results of its investigation. The

---

[1] All further statutory references are to the Welfare & Institutions Code unless otherwise noted.

[2] Julian and J. are not subjects of this appeal.

court ordered that the report should include "the details of who was interviewed, dates and places of birth of the relatives as far back as can be ascertained."

On May 3, 2012, DCFS interviewed the maternal grandmother, Vanessa S. (MGM), regarding possible Indian ancestry. MGM reported possible Cherokee heritage through Joshua's maternal great-grandmother, Anna S., and maternal great-grandfather, Elza W. The maternal great-grandmother died in 1991. MGM provided the names of Joshua's maternal great-great-grandmother and maternal great-great-grandfather, along with the names of several other distant ancestors, but she was unable to provide the dates of birth for any of them. When asked if the maternal great-grandfather could be interviewed, MGM stated that he was 80 years old and could not remember anything.

In a jurisdiction/disposition report dated May 23, 2012, DCFS recommended that mother be granted family reunification services with Joshua. As to Julian and J., DCFS recommended termination of jurisdiction with a family law order granting their father physical custody of the children.

DCFS searched for Joshua's alleged father, George, without success. On June 6, 2012, the juvenile court sustained the section 300 petition as alleged. The court declared the children dependents of the court, ordered Joshua's removal from mother, and awarded custody of Julian and J. to their father. Mother was granted reunification services as to Joshua, and jurisdiction was terminated over Julian and J. The matter was continued for a six-month review hearing.

On December 5, 2012, DCFS reported that mother was not in compliance with her reunification plan and had only sporadic contact with Joshua. Mother never made herself available to meet with the social worker during the six months of reunification. On March 5, 2013, the juvenile court terminated mother's reunification services and the matter was set for a section 366.26 hearing to establish a permanent plan for Joshua.

The section 366.26 hearing took place on July 2, 2013. DCFS reported having a prospective adoptive home for Joshua with Mr. and Mrs. A. The prospective adoptive parents had completed an adoptive home study and there were no legal impediments that

3

would prevent them from adopting Joshua. Joshua was placed with the family on June 14, 2013. The family loved Joshua and were committed to adopting him.

Mother had not had any contact with Joshua for six months. The whereabouts of Joshua's alleged father was still unknown. DCFS recommended termination of parental rights.

Though mother was not present at the section 366.26 hearing, her counsel was present. Mother's attorney advised the court that she had not received any direction from her client, but she objected to termination of parental rights on mother's behalf.

At the hearing, the juvenile court made its formal finding that ICWA was inapplicable. The court stated:

> "The court is making a finding today that I have no reason to know the child would fall under the Indian Child Welfare Act. Based on the investigation done by the Department in the report of May 23rd, 2012, mother indicated possible Cherokee ancestry. They contacted maternal grandmother, who also indicated possible Cherokee. No one had any further information. There's no indication that anybody was registered or eligible for membership. The court finds that the information provided was too vague and attenuated to trigger ICWA notices, is making a finding that the child does not fall under the Indian Child Welfare Act."

Mother's counsel did not object to the finding, or provide any additional information for the court to consider. The court then terminated parental rights and designated Mr. and Mrs. A as Joshua's prospective adoptive parents.

Mother filed a timely notice of appeal from the section 366.26 hearing.

## DISCUSSION

### I. Standard of review

Where, as here, the trial court has made a finding that ICWA is inapplicable, the finding is reviewed under the substantial evidence standard. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430 (*Rebecca R.*); *In re Karla C.* (2003) 113 Cal.App.4th 166, 178-179.) Thus, we must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we must indulge all legitimate inferences in favor of affirmance. (*In re John V.* (1992) 5 Cal.App.4th 1201,

4

1212.)  A juvenile court's ICWA finding is also subject to harmless error analysis.  (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.)

## II.  ICWA

ICWA is federal legislation designed to protect American Indian people and their culture.  (25 U.S.C. § 1902; *In re Crystal K.* (1990) 226 Cal.App.3d 655, 661.)  ICWA applies to all proceedings involving Indian children that may result in an involuntary foster care placement; guardianship or conservatorship placement; custody placement under Family Code section 3041; declaration freeing the child from the custody and control of one or both parents; termination of parental rights; or adoptive placement. (Cal. Rules of Court, rule 5.480.)

An "Indian child" is defined as any unmarried person under the age of 18 who is (1) a member of an Indian tribe; or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4); § 224, subd. (c).)

If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved in a dependency proceeding, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child as soon as practicable.  In a dependency proceeding, there is a continuing duty of the court and DCFS to inquire whether the subject child may be Indian.  (See § 224.3, subds. (a), (c).)  The social worker or probation officer must interview the parents and extended family members to gather the information required, then contact the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes of which the child may be a member or eligible for membership.  (§ 224.3, subd. (c).)

In order for the ICWA requirements to be triggered, there must be "more than a bare suggestion that a child might be an Indian child."  (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.)

## III.  Substantial evidence supported the juvenile court's finding that it had no reason to know that ICWA applied

In this case, the evidence supported the court's determination that it had no reason to know that Joshua was an Indian child.  The California Rules of Court provide the

5

circumstances under which a court has "reason to know" that the child is an Indian child. Those circumstances include:

> "(A)  The child or a person having an interest in the child, including an Indian tribe, an Indian organization, an officer of the court, a public or private agency, or a member of the child's extended family, informs or otherwise provides information suggesting that the child is an Indian child to the court . . . ;
>
> "(B)  The residence or domicile of the child, the child's parents, or an Indian custodian is or was in a predominantly Indian community; or
>
> "(C)  The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal government . . . ."

(Cal. Rules Court, rule 5.481(a)(5).)

None of these circumstances was present here.  Mother informed DCFS that her family may have Cherokee ancestry, but provided no additional information.  Mother's speculation does not suggest that Joshua could be described as an Indian child under the applicable law.  As set forth above, an Indian child must either be a member of an Indian tribe or eligible for membership and the biological child of a member of an Indian tribe. (§ 224, subd. (c).)

Mother argues that the social worker obtained further information from MGM, who also stated that she had "possible" Cherokee on both her mother's side and her father's side.  She provided the names of several ancestors.  However, this information was still insufficient to trigger the ICWA notice requirements.  While MGM was able to provide the names of her ancestors, she was unable to provide dates of birth or dates of death.  She provided no specific information suggesting that any of these ancestors was a member of any particular tribe.  Nor did she provide any information suggesting that any relative ever lived in Indian territory or received benefits from any tribe.  When the social worker sought further information from a living relation, MGM discouraged such an interview, stating that the relation was 80 years old and would not remember.  Thus, the

6

information provided by MGM did not provide any additional facts giving the court reason to know that Joshua could be described as an Indian child under the applicable law.

Courts have recognized that the requirements of ICWA are not triggered when the possibility that a child has Indian ancestry is based on vague information. For example, in *In re O.K.* (2003) 106 Cal.App.4th 152, ICWA notice was sent to the Bureau of Indian Affairs based on the mother's statement that she "'may be of Native American [h]eritage.'" (*Id.* at p. 154.) The notice was returned because it contained "'[i]nsufficient identifying tribal information.'" (*Ibid.*) At the section 366.26 hearing, the paternal grandmother further informed the court, "'the young man may have Indian in him. I don't know my family history that much, but where were [*sic*] from it is that section so I don't know about checking that.'" (*Id.* at p. 155.) Under these circumstances, the trial court's finding that there was no reason to believe the child was Indian was affirmed on appeal.

Similarly, in *In re Z.N.* (2009) 181 Cal.App.4th 282 (*Z.N.*), mother had stated her belief that one of her grandmothers was Cherokee and another part Apache. The specific tribes were unidentified. Mother reported that she was not registered and did not believe her mother established any tribal affiliation. In affirming the trial court's determination that tribal notice was not necessary, the court stated:

> "Whatever the status of the grandmothers, they were great-grandmothers of the twins, and this information did not suggest that the twins were members or eligible for membership as children of a member. We agree . . . that this did not trigger a duty to notify tribes. Thus there was no error."

(*Z.N., supra*, 181 Cal.App.4th at p. 298.)

The facts of *Z.N.* are analogous to the matter before us. Mother believed she may have Cherokee ancestry, but had no specific information regarding eligibility for membership in any tribe. As in *Z.N.*, this did not trigger a duty to notify any tribes. (See also *In re J.D.* (2010) 189 Cal.App.4th 118, 125 [paternal grandmother's belief that she had Native American ancestry was "too vague, attenuated and speculative to give the

7

dependency court any reason to believe the children might be Indian children"].)  We find that the juvenile court's finding is supported by the record, and no error occurred.

Furthermore, mother has failed to make a showing that she was prejudiced by any alleged error in failing to send out ICWA notices.  Other courts have agreed that a parent must make an affirmative showing that a miscarriage of justice would result in order to obtain a reversal for noncompliance with ICWA.  In *In re S.B.* (2005) 130 Cal.App.4th 1148 (*S.B.*), the court expressed the view that "[a]n ICWA notice violation may be held harmless when the child's tribe has actually participated in the proceedings [citation] or when, even if notice had been given, the child would not have been found to be an Indian child, and hence the substantive provisions of the ICWA would not have applied. [Citations.]"  (*Id.* at p. 1162, fn. omitted.)  (See also *In re Miracle M.* (2008) 160 Cal.App.4th 834, 847 ["Mother has not demonstrated how giving the parents further notice would generate additional information"].)

We adopt the rationale of these cases in holding that in this case, mother has failed to show reversible error.  As appellant, it is mother's burden to show prejudicial error. (Cal. Const., art. VI, § 13.)  "Where, as here, the record is devoid of any evidence a child is an Indian child, reversing the judgment terminating parental rights for the sole purpose of sending notice to the tribe would serve only to delay permanency for a child such as [Joshua] rather than further the important goals of and ensure the procedural safeguards intended by ICWA."  (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539; see also *Rebecca R., supra*, 143 Cal.App.4th at p. 1431 ["Parents cannot spring the matter for the first time on appeal without at least showing their hands.  Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way"].)

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS


_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.