Filed 5/13/16  In re Isaiah M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ISAIAH M. et al., Persons Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>VICTORIA M.,<br><br>　　Defendant and Appellant. | B266626<br><br>(Los Angeles County Super. Ct. No. CK96086) |

　　APPEAL from an order of the Superior Court of Los Angeles County, Zeke Zeidler, Judge.  Affirmed.

　　William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel for Plaintiff and Respondent.

———————————————

Victoria M. (mother) appeals an order of the juvenile court terminating her parental rights to Isaiah M., born October 2012, and H.M., born December 2013.[1] Mother's sole contention on appeal is that the juvenile court erred in failing to order compliance with the notice provisions of the Indian Child Welfare Act (ICWA), 25 United States Code section 1901 et seq. and Welfare and Institutions Code section 224.3.[2] We find no error, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Isaiah tested positive for cocaine exposure at birth and was immediately detained by the Department of Children and Family Services (DCFS). DCFS filed a dependency petition on October 22, 2012, alleging that Isaiah was a juvenile court dependent pursuant to section 300, subdivision (b), because he was exposed to cocaine in utero, mother had a twenty-two year history of drug use and was a current user of cocaine, and mother had been diagnosed with bipolar disorder and failed to take her prescribed medication.

At the October 22, 2012 detention hearing, mother submitted a "Parental Notification of Indian Status" in which she stated that she had no known Indian ancestry. However, the maternal grandmother addressed the court and said that her mother and father (i.e., the maternal great grandparents) were "part Cherokee." She explained she learned about the family's heritage from her parents, who told her "we had a little Cherokee [heritage] from my great grandparents, great great grandparents." Maternal grandmother said she did not know from which tribes her parents may have descended, and neither she nor her parents were enrolled members of a tribe.

The court found a prima facie case for detaining Isaiah and ordered him placed in foster care. The court further found that ICWA did not apply: "Based upon the Welfare and Institutions Code . . . , four generations not being registered and the information being from the great grandparents [that] they had a little Cherokee in them, the court does

---

[1] The identities of the children's fathers are unknown.

[2] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

not have reason to know or believe the child is an Indian child as defined by the Indian Child Welfare Act. [The] Indian Child Welfare Act [ICWA] does not apply." The court ordered DCFS to investigate Isaiah's Indian ancestry, however, and to detail its investigation in its next report.

The jurisdiction/disposition report stated that a children's social worker (CSW) had interviewed the maternal grandmother, who indicated that neither her grandparents nor her great-grandparents were enrolled members of a tribe. The maternal grandmother said the members of her family considered themselves "white Americans."

A contested jurisdiction/disposition hearing was held on December 11, 2012. The court sustained the allegations of the petition and ordered reunification services for mother.

On July 25, 2013, the court found that mother had not made progress in her court-ordered treatment plan, and it ordered mother's family reunification services terminated. A section 366.26 hearing was set for November 25, 2013, and was later continued to March 24, 2014.

Mother gave birth to H.M. in December 2013. Mother and H.M. tested negative for drugs at the time of H.M.'s birth. On January 17, 2014, DCFS filed a petition alleging that H.M. was a juvenile court dependent pursuant to section 300, subdivisions (b) and (j) because mother had a lengthy history of drug abuse and was a recent user of cocaine, and mother failed to reunify with Isaiah. However, DCFS allowed H.M. to remain with mother, who was living in a residential drug rehabilitation program for mothers and their children.

On January 17, 2014, the court found DCFS had made a prima facie showing that H.M. was a child described by section 300, but ordered her placed with mother, contingent on mother's continued residence at the drug rehabilitation facility and continued clean drug tests. DCFS was ordered to provide mother with family reunification services.

Mother submitted a "Parental Notification of Indian Status" in connection with H.M.'s dependency proceeding in which she stated she had no known Indian ancestry.

3

The court noted that the maternal grandmother had previously indicated she had some Cherokee heritage, and that the court had found ICWA did not apply. The court then asked the maternal grandmother whether she had any new information about the family's Indian heritage since the court's last inquiry. The maternal grandmother said she did not have any new information, and the court found it did not have reason to believe H.M. was an Indian child within the meaning of ICWA.

On March 24, 2014, the court sustained the allegations of the petition as to H.M., continued the section 366.26 hearing as to Isaiah, and ordered DCFS to provide mother with reunification services. On March 27, 2014, mother filed a section 388 petition asking the court to reinstate her family reunification services as to Isaiah. The court granted the section 388 petition on April 30, 2014, and ordered Isaiah placed with mother.

Mother completed her drug rehabilitation program in April 2014. Mother and the children lived briefly in a sober living facility, but mother was asked to leave the facility in August due to an arrest for battery and a strained relationship with the house manager.

DCFS filed a supplemental petition for both children on November 17, 2014. It alleged that mother failed to regularly participate in her substance abuse after-care program, to submit to random drug testing, to follow up with her psychiatrist for medication management, and to notify DCFS of her and the children's whereabouts. On November 17, 2014, the juvenile court issued protective custody warrants for the children and an arrest warrant for mother. On December 1, 2014, mother was arrested and the children were detained and placed in foster care. They subsequently were placed in a prospective adoptive home.

The court sustained the allegation of the supplemental petition on January 14, 2015. On March 3, 2015, the court denied mother reunification services pursuant to section 361.5, subd. (b)(10), and set a section 366.26 hearing for May 11, 2015.

On August 20, 2015, the court terminated mother's parental rights to Isaiah and H.M. Mother timely appealed.

4

## DISCUSSION

Mother's sole contention on appeal is that the juvenile court erred by failing to order compliance with the notice provisions of ICWA. She urges that because the maternal grandmother told the court that the children may have Indian ancestry, the court should have ordered DCFS to send ICWA notices to federally registered Cherokee tribes and the Bureau of Indian Affairs (BIA). Mother contends that because such notices were not provided, the order terminating parental rights should be reversed. For the reasons that follow, we disagree and affirm.

ICWA is intended to protect Indian children and to promote the stability and security of Indian tribes and families. (*In re Karla C*. (2003) 113 Cal.App.4th 166, 173-174.) The statute reflects a Congressional determination that it is in the best interests of Indian children to retain tribal ties, and in the interest of tribes to preserve their future generations. (25 U.S.C. § 1902; see *In re H.G.* (2015) 234 Cal.App.4th 906, 909-910.)

ICWA provides that "where the court *knows or has reason to know that an Indian child is involved* [in a dependency proceeding], the party seeking foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and its right to intervene. (25 U.S.C. § 1912(a), italics added.) California law also requires notice to the Indian custodian and the Indian child's tribe if DCFS or the court knows or has reason to know an Indian child is involved in the proceedings. (§ 224.3, subd. (d).)

For purposes of ICWA, an "Indian child" is a child who is either "(a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).) The circumstances that provide reason to know the child is an Indian child "include, but are not limited to, the following: . . . A person having an interest in the child, including . . . a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1).)

5

In *In re Z.N.* (2009) 181 Cal.App.4th 282, the mother told a social worker that " ' "her maternal grandmother was Cherokee and her paternal grandmother was part Apache. [However, mother was] not registered with any tribe and [did] not believe [the grandmother] established any affiliation." ' " The mother urged on appeal that this disclosure triggered a duty to provide notice of the dependency proceeding to the Cherokee and Apache tribes. (*Id.* at p. 297.) The Court of Appeal disagreed and affirmed orders terminating mother's parental rights: "[B]ecause the ICWA applies only to 'Indian' children, defined by Congress as those (1) who are members or (2) who are eligible for membership *and* a child of a member (25 U.S.C. § 1903(4); *In re O.K.* (2003) 106 Cal.App.4th 152, 155-156), the scant and general information available to the court here did not require tribal notice. *In re O.K.* found information that a father ' "may have Indian in him" . . . too vague and speculative to give the juvenile court any reason to believe the minors might be Indian children.' (*Id.* at p. 157.) Here, we additionally had mother's belief that one of her grandmothers 'was Cherokee' and another 'part Apache' (tribes unidentified), yet mother also reported that she herself was not registered and did 'not believe her mother established any affiliation.' Whatever the status of the grandmothers, they were great grandmothers of the twins, and this information did not suggest that the twins were members or eligible for membership as children of a member. We agree with [the human services agency] that this did not trigger a duty to notify tribes. Thus there was no error." (*Id.* at p. 298.)

The present case is analogous. Here, the maternal grandmother told the court that she "had a little Cherokee [heritage]" through her "great grandparents, great great grandparents"—i.e., through Isaiah's and H.M.'s great-great-great-grandparents and great-great-great-great-grandparents. The maternal grandmother did not suggest, however, that the children or their mother were tribal members or eligible for tribal membership, and she specifically said that neither she (the grandmother) nor her parents (the great-grandparents) were enrolled members of a tribe. Mother also disclaimed Indian ancestry on behalf of herself and the children. Thus, since neither the children's "parents, grandparents, or great-parents are or were members of a tribe," the juvenile

6

court did not have reason to know that Isaiah and H.M. were Indian children within the meaning of section 224.3, subd. (b)(1), and tribal notice therefore was not required.

*In re Alice M.* (2008) 161 Cal.App.4th 1189 (*Alice M.*), on which mother relies in support of her claim that proper ICWA notice was not given, does not assist her. There, a mother advised the court that her daughter, Alice, " 'is or may be a member of, or eligible for membership in' " the Navajo or Apache tribes. (*Id.* at p. 1194.) The Court of Appeal found that on these facts, notice to the tribes was required. It explained: "In completing the JV-130 form, appellant stated that Alice is or may be a member of, or eligible for membership in, an Apache and/or Navajo tribe. The ambiguity in the form and the omission of more detailed information, such as specific tribal affiliation or tribal roll number, do not negate [mother's] stated belief that Alice may be a member of a tribe or eligible for membership." (*Id.* at p. 1198.)

The present case is distinguishable. In *Alice M.*, the mother advised the court that her child " 'is or may be a member of, or eligible for membership in' " particular Indian tribes. (*Alice M.*, *supra*, 161 Cal.App.4th at p. 1195.) Here, in contrast, mother twice submitted forms to the court in which she stated she had no known Indian ancestry and maternal grandmother made no representations about the children's membership or eligibility for membership in any Cherokee tribe—at most, the maternal grandmother suggested that that the children's great-great-great-grandparents or great-great-great-great-grandparents may have been tribal members. Nothing in *Alice M.* suggests that such an attenuated relationship to an Indian tribe triggers a duty of notice under ICWA.

## DISPOSITION

The order terminating parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:


LAVIN, J.


HOGUE, J.*

_____

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8