Filed 8/22/14  In re J.C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | B253599 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>APRIL P.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK91384) |

APPEAL from an order of the Superior Court of Los Angeles County. Annabelle Cortez, Judge.  Conditionally reversed and remanded.

Christy C. Peterson, under appointment by the Court of Appeal, for Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel.

————————————

April P. (Mother) appeals from the order terminating her parental rights to her son, J.C., and implementing a permanent plan of adoption. Mother's sole contention on appeal is that respondent Department of Children and Family Services (DCFS) failed to comply with notice requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). We reverse and remand with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

The issue on appeal makes a detailed recitation of the facts unnecessary. It is sufficient to observe that J.C. was 18 months old when a general neglect referral led to his detention in January 2012. As sustained on April 16, 2012, an amended section 300 petition alleged mother left J.C. with maternal great-grandmother for extended periods without making an appropriate plan for his ongoing care (paragraph b-1) and mother had an unresolved history of drug abuse (paragraph b-3).[1] J.C. was eventually placed with a paternal great-aunt. By April 2013, mother had not complied with any aspect of the case plan and the paternal great-aunt wanted to adopt J.C. Mother's reunification services were terminated and a section 366.26 permanent plan selection hearing (.26 hearing) was scheduled for July 2013. Following a number of continuances, the .26 hearing occurred on December 27, 2013.[2] The juvenile court terminated parental rights and selected adoption as the permanent placement plan. Mother timely appealed.

---

[1]    All undesignated statutory references are to the Welfare and Institutions Code. J.C.'s father was incarcerated during the dependency proceedings with an expected release date in 2016. The petition did not include any allegations against him and he is not a party to the appeal.

[2]    During the intervening months, mother gave birth to twin girls (the half-siblings) who were detained and placed with J.C. in the home of the paternal great-aunt. A section 300 petition was later sustained as to the half-siblings; reunification services were ordered for their father, but not for mother.

A.     *ICWA Compliance*

At the detention hearing on January 11, 2012, paternal great-grandmother (PGGM) stated that her great-grandmother had been a "full-blood" Iroquois, but the family was not enrolled.

In February 2012, DCFS gave ICWA notice to the "ICWA Representative" of the following tribes designated as Iroquois-affiliated in the then current list of Indian tribes published in the Federal Register:  (1) Cayuga Nation; (2) Oneida Indian Nation of New York; (3) Onondaga Nation; (4) Saint Regis Band of Mohawk Indians; (5) Seneca Nation of Indians; and (6) Tuscarora Nation of New York.  (See 76 Fed.Reg. 30438 et seq.)  DCFS did not send any notice to a seventh tribe designated in the Federal Register as Iroquois-affiliated:  the Tonawanda Band of Seneca.  The notice to the Cayuga Nation of New York was sent to an incorrect address.[3]

In a letter dated February 7, 2012, the Federal Bureau of Indian Affairs notified DCFS that it was returning the ICWA notice sent to it because "it does not require a response or action.  The county has provided an appropriate notice to the tribe or tribes."  The following tribes notified DCFS that J.C. was not enrolled or eligible for enrollment: (1) Oneida Indian Nation, (2) Saint Regis Mohawk Tribe, (3) Seneca Nation of Indians, and (4) Tuscarora Nation.  Although a return receipt was received from the Onondaga Nation of New York, that tribe did not respond to the notice.  On February 9, 2012, the notice sent to "Cayuga Nation" was returned to DCFS marked:

> "FORWARD TIME EXP  RTN TO SEND
> : CAYUGA NATION
> P.O. BOX 803
>  SENECA FALLS, NY 13148-0803
> RETURN TO SENDER"

On April 16, 2012, the juvenile court found ICWA did not apply.

---

[3]     The notice was sent to:  "Cayuga Nation, P.O. Box 11, Versailles, NY [zip code illegible]."  The address designated in the Federal Register was:  "Cayuga Nation of New York, P.O. Box. 803, Versailles, New York, 14168."

3

**DISCUSSION**

Mother's sole contention on appeal is that the juvenile court's finding that ICWA did not apply was not supported by substantial evidence. She argues that this is because notice was inadequate to the following Iroquois-affiliated tribes: Cayuga Nation of New York, Tonawanda Band of Seneca, Seneca-Cayuga Tribe of Oklahoma, and Oneida Tribe of Wisconsin. We find insufficient evidence of proper ICWA notice to the Cayuga Nation of New York, the Onondaga Nation of New York and the Tonawanda Band of Seneca. Mother has not shown the other two tribes are Iroquios-affilated.

Mother has standing to challenge ICWA compliance even though she is not the parent with alleged Indian heritage. (*In re B.R.* (2009) 176 Cal.App.4th 773, 779-780.) We review the trial court's ICWA notice findings for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 404.) Deficiencies in ICWA notice are generally prejudicial, but "[w]here notice has been received by the tribe, errors or omissions in the notice are reviewed under the harmless error standard." (*In re S.E.* (2013) 217 Cal.App.4th 610, 615.)

Where the state knows or has reason to know that an Indian child is involved in dependency proceedings, ICWA requires that the relevant tribes be given notice of the proceedings by registered mail with return receipt requested. (25 U.S.C. § 1912(a).) In California, ICWA's notice requirements are set forth in Welfare and Institutions Code section 224.2. Subdivision (a)(3) of section 224.2 requires notice to be sent to "all tribes of which the child may be a member or eligible for membership . . . ." The California Rules of Court require the social worker to contact "the Bureau of Indian Affairs and the California Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership" and contact "the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."

4

(Rule 5.481(a)(4)(B) & (C).) [4] Notice must be sent to the tribal chairperson unless the tribe has designated another agent for service. (Rule 5.481(b)(4).)

An official list of all federally recognized tribes is published periodically in the Federal Register. (25 U.S.C. § 479a-1; see *Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 243.) When DCFS was giving ICWA notice in this case, the most current list had been published on May 25, 2011. (76 Fed.Reg. 30438 et seq.) It listed tribes in two different formats: (A) alphabetically by tribe within each region and (B) by tribal affiliation. In the tribal affiliation section, the following seven tribes were identified as Iroquois-affiliated: (1) Cayuga Nation of New York, (2) Oneida Indian Nation, (3) Onondaga Nation of New York, (4) Saint Regis Mohawk Tribe, (5) Seneca Nation of Indians, (6) Tonawanda Band of Seneca and (7) Tuscarora Nation of New York. (76 Fed.Reg. 30348 et seq.)

In determining whether ICWA notice was sufficient in this case, we take guidance from *In re Alice M.* (2008) 161 Cal.App.4th 1189, in which the mother challenged ICWA compliance where a social worker sent ICWA notice to eight tribes in the manner required by the statute. Although the social worker received eight return receipts, three of the eight tribes did not respond to the notice (the other five tribes found the child not eligible for membership). Rejecting the trial court's finding of substantial compliance with ICWA, the appellate court held that a return receipt was not sufficient to show that the three tribes actually received notice. (*Id*. at p. 1201.)

Here, PGGM's statement at the January 2012 detention hearing that her own great grandmother was a "full blood" Iroquois gave the DCFS social worker reason to know that J.C. may be an Indian child. (See rule 5.481(a)(5)(A).) This knowledge triggered the social worker's duty to contact "the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (Rule 5.481(a)(4)(C).) The social worker was required to give ICWA notice to the seven tribes identified as Iroquois-affiliated in the Federal Register, including the Cayuga

---

**4** All undesignated rule references are to the California Rules of Court.

Nation of New York, the Onondago Nation of New York and the Tonawanda Band of Seneca. There is no dispute that the social worker failed to give any notice to the Tonawanda Band of Seneca. Notice to the Cayuga Nation of New York at an incorrect address was not sufficient where the notice was returned unopened; the proper course of action in such case would be to resend the notice to the correct address. Finally, under *Alice M., supra*, the absence of any response from the Onondago Nation of New York constitutes insufficient evidence of notice to that tribe. The failure to comply with ICWA's notice requirements as to these three tribes requires conditional reversal.

We are not persuaded otherwise by DCFS's arguments that (1) the PGGM's identification of her own great-grandmother as an Iroquois was too vague and speculative to require notification to any tribe, and (2) since the Cayuga Nation of New York determines eligibility based on the mother's eligibility, J.C. could not have been found eligible even if his father was eligible.

Regarding the first argument, DCFS relies on various cases in which information that the child may have some nontribe specific Indian heritage was found insufficient to trigger the ICWA notice requirements. (See e.g. *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1465; *In re J.D.* (2010) 189 Cal.App.4th 118, 123; *In re O.K.* (2003) 106 Cal.App.4th 152, 157.) This case is factually inapposite to those cases. Here, PGGM's identification of a specific ancestor and tribal affiliation was sufficient to trigger the ICWA notice requirements.

Regarding J.C.'s eligibility for membership in the Cayuga Nation of New York, we decline DCFS's request for judicial notice of a page captioned "Enrollment and Genealogy" apparently printed from the Cayuga Nation of New York's website. It is for the Cayuga Nation of New York to determine whether a child is eligible for membership in that tribe, not the state court. (*In re B.R., supra,* 176 Cal.App.4th at p. 781; but see *In re J.M.* (2012) 206 Cal.App.4th 375, 381 [after taking judicial notice of the tribal membership criteria, the appellate court found failure to name great-great-grandparents in ICWA notice was harmless].)

Also unavailing is DCFS's argument that the Tonawanda Band of Seneca is not listed as an Iroquois-related tribe in the most recent Federal Register (79 Fed.Reg. 3225 et seq.)  As we explained, at the time the social worker was sending ICWA notices in this case, the Federal Register listed tribes in two different formats, one of which was by tribal affiliation.  (76 Fed.Reg. 30438 et seq.)  The current list does not use the tribal-affiliation format.  That Bureau of Indian Affairs has abandoned the tribal-affiliation format does not alter the fact that the Tonawanda Band of Seneca is Iroquois-affiliated.

## DISPOSITION

The order terminating parental rights is reversed.  The case is remanded to the juvenile court with directions to order DCFS to send notice to the Cayuga Nation of New York, the Onondaga Nation and the Tonawanda Band of Seneca in accordance with ICWA.  If, after proper notice, the court finds that J.C. is an Indian child, the court shall proceed in conformity with ICWA.  If, after proper notice, the court finds that J.C. is not an Indian child, the order terminating parental rights and selecting adoption as the permanent plan shall be reinstated.


                                                    RUBIN, J.

WE CONCUR:



            BIGELOW, P. J.



            FLIER, J.


7